# CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH

Integon Indemnity Ins. Co.

v.

John Quillen, Jr., et al.

October 26, 2009

Case No. CL08-5335

BY JUDGE STEPHEN C. MAHAN

This matter is before the Court on the Amended Complaint for Declaratory Judgment filed by Plaintiff Integon Casualty Insurance Company (Integon). Integon asks the Court to declare that it has no obligation to defend or to indemnify Defendant Jovonn Quillen (Jovonn) from claims against him by defendant Lashonda Roberts for injuries and damages alleged to arise from his negligent operation of a motor vehicle on July 22, 2007. At the time of the collision, Jovonn was operating a motor vehicle owned by his father, Defendant John Quillen, Jr. (John). John is the named insured on the policy of automobile insurance issued by Integon at issue in this matter. Roberts further alleges that, at the same place and time, Warnell Dozier, in the course of his employment with Defendant City of Virginia Beach, also negligently operated his vehicle, causing her injuries and damages. Named as additional defendants are Roberts' auto insurer, Progressive Casualty Insurance Company (to the extent Roberts' uninsured/underinsured motorist coverage is implicated), Dozier, and the City of Virginia Beach.

Trial of this matter was held on April 29, 2009. On the day of trial, The Court granted Integon's motion to amend the style of the case to correct a scrivener's error as to its proper name. The Court denied Roberts' motion to continue. No order reflecting either ruling has been tendered to the Court by counsel. Following trial, Integon and Roberts filed post-trial briefs. In her brief, Roberts moves to dismiss Integon's claim for declaratory judgment.

After consideration of the evidence presented, argument, and authorities advanced by the parties, the Court denies Robert's motion to dismiss and finds in favor of the Plaintiff, Integon, for the reasons that follow.

The following facts are undisputed. On April 12, 2006, Defendant John Quillen, Jr. (John), submitted an application for automobile insurance to Integon. The application for insurance required John to list all persons of eligible driving age or permit age that were drivers of the vehicle proposed for insurance and who were members of his household. The application also required a certification from John that he had listed all persons age 15 and older who lived with him and who did not have any other automobile insurance, as well as all other operators of the vehicle not residing in his household. John failed to disclose that he had a son, Jovonn, who resided in his household and who would be operating the vehicle. At the time of the application, Jovonn was over the age of 15.

The parties agree that, for Integon to prevail in this action, it must prove that John made a false statement or an omission on the application for insurance and that its reliance on the false statement or omission was material to its decision to undertake the risk and to issue the policy. Although Roberts asserts that Integon's burden of proof on each of those elements is by "clear and convincing evidence," the authorities do not appear to support that assertion. Rather, the insurer must show, by "clear proof," that its reliance on the false statement or omission was material to the company's decision to undertake the risk and to issue the policy. To prove the falsity of the statement(s) or to prove the omission(s) is not sufficient; the insurer must "prove clearly" that truthful answers would have reasonably influenced the company's decision to issue the policy. *Montgomery Mutual Ins. Co. v. Riddle*, 266 Va. 539, 587 S.E.2d 513 (2003).

In her post-trial brief (Brief in Support of Motion to Dismiss), Roberts concedes "that a false statement was made and the statement would be material if actually relied upon by the insurer." Roberts' Brief at 2. The only issue in dispute, therefore, is the reliance of Integon on the nondisclosure and false statements of John Quillen. *See* Roberts' Brief at 2.

The Virginia Supreme Court recently refined the analysis of the elements of reliance in the case of *Portillo v. Nationwide Mutual Fire Ins. Co.*, 277 Va. 193 (2009). In *Portillo*, the Court reiterated that a nondisclosure or omission is material when knowledge or ignorance of facts "reasonably influenced" the insurer's fixing of the rate of the premium charged. *Id.* (citations omitted). The Court held that the nondisclosure of a twenty-one year old, licensed nephew who was a household member was material when knowledge of that fact would have influenced the insurer's fixing of the premium, resulting in a higher premium. *Id.* As a result, the Court sustained the trial court's declaratory judgment in favor of the insurer that the policy issued by the insurer was void based upon material misrepresentations of the insured "clearly proved." *Id.* In its analysis, the Court essentially equated the concepts of "reliance" and "influence" for the purpose of determining the materiality of a nondisclosure or omission.

Roberts argues that Integon failed at trial to prove the element of reliance (or, presumably, influence) since it did not introduce the testimony of an underwriter who actually reviewed John's false application and who relied upon it in issuing the policy or in fixing the premium charged. Roberts appears to base that assertion upon the holdings in *Harrell v. North Carolina Mutual Ins. Co.*, 215 Va. 829, 833 (1975), and in *Montgomery Mutual Ins. Co.*, *supra*, as well as upon her evaluation of the testimony given by Sharon Dowell in favor of Integon. Roberts' argument is unavailing on all points.

Having thoroughly reviewed both the *Harrell* and *Montgomery Mutual Ins. Co.* cases, I find nothing in either case that holds or decrees the testimony of an underwriter is the *sine qua non* for establishing the element of reliance (or the element of influence referred to in *Portillo*).

In *Harrell*, the trial court observed that it had "waited in vain" to hear "somebody" testify that the insurer would not have issued the policy if it had known the facts misrepresented by the insured. Nevertheless, the trial court apparently entered judgment in favor of the insurance company. The Supreme Court reversed, noting that, although an insurance agent, a district manager, and a claims adjuster all testified, "[n]o witness testified as to the policy of the company in considering such applications." As a consequence, the Court held that the insurer did not carry the "burden of clearly proving" materiality. *Harrell, supra*, at 833.

While the majority in *Harrell* may have noted that an underwriter did not testify for the insurer, the mere recitation of that fact, in the context of the majority opinion, cannot reasonably be read for the proposition that the insurer's burden of proof can only be met by the testimony of an underwriter who actually reviewed the policy at issue. Rather the majority only appears to

require that *some* witness "testify as to the policy of the company in considering such applications" and that the witness testify the insurer relied upon the misrepresentation(s) in issuing the policy.

Admittedly, Justice Poff, at first blush, appears to suggest in dissent that the majority opinion dictates the evidentiary requirement advanced by Roberts in this case:

> Under that rule, no matter how clear the evidence and the inferences arising from it may be, [the insurer] fails to satisfy the statutory evidentiary standard unless the insurer calls a witness (who apparently must be no less than an underwriter) to give rote testimony that it would not have issued the subject policy if it had known the truth.

*Id.* at 835.

Upon close examination, however, Justice Poff's parenthetical comment is really no more than a rhetorical device utilized to punctuate his argument. His use of the word "apparently," together with the placement of his comment in parentheses and the exaggerated language employed, all establish the comment as rhetorical hyperbole and not an expression of actual belief that the majority had just imposed such an evidentiary standard by judicial fiat. Even if valid at the time, however, Justice Poff's concern can now be laid to rest, since the intervening thirty-four years have failed to yield another published case supporting such a reading of the majority opinion.

In *Montgomery Mutual Ins. Co.*, the insurer argued that the trial court erred when it held that the insurer failed to prove its "agent" relied on the alleged misrepresentations of the insured when the agent bound coverage. *Montgomery Mutual Ins. Co., supra*, at 542. The Supreme Court of Virginia reviewed the record, could not find that the trial court was plainly wrong or without evidence to support its judgment and accordingly affirmed the judgment of the trial court. *Id.* at 543. *Montgomery Mutual Ins. Co.* therefore provides even less support for Roberts' position.

The recent case of *Portillo, supra*, is particularly instructive on this point. The record in that case disclosed that a "representative" of the insurance carrier testified that the insurer did not know of an undisclosed household member of driving age in the insured's household, the insured's nephew. The "representative" further testified that, had the insurer known of the undisclosed household member when the policy was issued, the insurance premium would have been greater than the premium charged for the policy issued. *Id.* at 195. Based upon that testimony, the trial court held that the

insured's misrepresentations in the application for insurance "were material because they would have 'cause[d] the insurer to reject the risk or accept it only at a higher premium rate.' The trial court, therefore, ruled that the policy was void." *Id.* at 195-96. The Supreme Court affirmed. The opinion does not suggest that the "representative" who testified either was an underwriter or was someone who personally had reviewed the insurance application and had decided to accept the risk or who had fixed the premium charged. Neither does the Court suggest that such a witness was required to testify.

In the instant case, the defendant's did not present any evidence from which even an inference could be drawn that an underwriter occupied such a unique position within Integon that only an underwriter was capable of presenting evidence as to the policies and practices of the company related to John's application for insurance, much less anyone else's application. As noted above, the case law does not specify that only an underwriter can present such testimony. Neither has any reasonable policy or evidentiary reason been advanced that would require such a witness in these types of cases generally, or in this particular case. In the absence of any such requirement, the weight and the sufficiency of the evidence given by all of the witnesses therefore are matters for the trial court to evaluate in accord with well-known and long established principles of law related to such evidence and in accord with the legal standards applicable to this case, as set forth above.

Having disposed of the foregoing issues, the sole remaining issue is whether or not Integon relied on John's application for insurance before deciding to issue his policy or in deciding the amount of the premium to be charged for the policy. The relevant evidence I found persuasive on that point follows.

Sharon Dowell, a customer relations specialist with Integon's parent company, employed by that company for over thirty years, testified based upon her personal knowledge of the company's practices related to John's application and upon her personal review of John's application after the company learned of John's misrepresentations. Among Ms. Dowell's duties for the company are the analysis of policies and the calculation of premiums based upon the information disclosed by the prospective insured on the insurance application. Ms. Dowell did not personally review John's application before its acceptance by Integon, nor is she an underwriter.

Ms. Dowell testified that the reason Integon requires an insurance application, such as the one submitted by John, is to allow it to properly assess the risk of the proposed undertaking, as well as to calculate the required premium for any risk accepted. Ms. Dowell further testified that Integon relied

on the application submitted by John for those purposes. Based upon the information submitted on the application, Integon agreed to issue a policy to John and calculated the initial premium at slightly over $1,700.00.

A little over one year after issuing the policy, Ms. Dowell testified that Integon learned of the July 22, 2007, motor vehicle collision that involved Jovonn as the driver of the insured vehicle. Integon then learned of Jovonn's status in John's household and that he was a regular driver of the automobile at the time of John's application for insurance. As is conceded by Roberts, those facts were misrepresented on John's insurance application to Integon.

After obtaining Jovonn's driving record and other pertinent information related to Jovonn, Ms. Dowell personally reviewed the new information and performed the calculations required to arrive at the proper premium for the risk associated with Jovonn's residence in John's household at the time the policy was issued. Had Integon known of Jovonn's residence in John's household at the time John submitted his application, Ms. Dowell testified that Integon would not have issued the policy at the initial premium of approximately $1,700.00. While Ms. Dowell testified that Integon would still have agreed to issue a policy to John had he truthfully disclosed Jovonn's status, it would have done so only at an initial premium of almost $2,300.00, approximately 30% greater than the premium charged based on the false application.

The Court finds that Ms. Dowell's uncontested qualifications were more than sufficient to establish that she had responsibilities for Integon that included the analysis of risk disclosed in insurance applications and the calculation of premiums based upon that risk. Her analysis and calculations in this case left nothing to assumption or conjecture, as did the evidence in *Harrell, supra.* ("The burden of *clearly* proving the affirmative defense of materiality of a misrepresentation is not carried when the court, to find the fact, must resort to assumption and conjecture."). *See id.* No inferences need be drawn from her testimony. The testimony of Ms. Dowell proves clearly (if not overwhelmingly), that Integon was influenced in its decision to issue John's policy at the initial premium of approximately $1,700.00 by the false application John submitted, upon which it relied. The testimony also proves that, had John been truthful and made Integon aware of the actual risk it was undertaking, the policy would have issued at an approximately 30% greater premium.

As in *Portillo, supra,* Integon's evidence clearly proves that John made false statements to it on his application for insurance, that Integon relied on those false statements, and that Integon was influenced by those false statements into fixing a premium approximately 30% lower than it would have

fixed had it been provided with truthful information about the actual risk associated with John's application. The Court concludes that the misrepresentations therefore were material.

Accordingly, this Court enters judgment in favor of Integon and declares that the policy of insurance issued to John is void and that Integon has no duty to defend or to indemnify Jovonn under John's policy for Jovonn's alleged liability to Roberts for injuries and damages she claims were sustained as a result of the automobile collision of July 22, 2007.